HATHAWAY DINWIDDIE CON-
STRUCTION COMPANY, a Califor-
nia corporation, Plaintiff—Appellant,

v.

UNITED AIR LINES, INC., a Delaware
corporation, Defendant—Appellee.

Hathaway Dinwiddie Construction
Company, a California corpora-
tion, Plaintiff—Appellee,

v.

United Air Lines, Inc., a Delaware
corporation, Defendant—
Appellant.

No. 01–55917, 01–56015.
D.C. No. CV–00–01289–ABC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 2002.

Decided Sept. 6, 2002.

**819**

Before T.G. NELSON, PAEZ and TALLMAN, Circuit Judges.

MEMORANDUM *

Hathaway Dinwiddie Constructon Company ("Dinwiddie") appeals the district court's summary judgment in favor of United Airlines ("United") in Dinwiddie's

diversity action for breach of contract, fraud, and equitable relief. United also counterclaimed for indemnity against Dinwiddie, and now cross-appeals the district court's ruling granting summary judgment in favor of Dinwiddie on this counterclaim.

We have jurisdiction under 28 U.S.C. §§ 1291 and 1332. We affirm in part, reverse in part, and remand for further proceedings. Because the parties are familiar with the facts, we will refer to them only as necessary to explain our disposition.

I.

A. BREACH OF CONTRACT CLAIM AND DERIVATIVE CLAIMS

1. BREACH OF CONTRACT CLAIM (FIRST CLAIM FOR RELIEF)

■ We reverse the grant of summary judgment on Dinwiddie's breach of contract claims and remand because there are genuine, material triable issues of fact regarding the formation of the contract at issue here. There is at least a triable issue of fact whether the No Damages for Delay Provisions originally proffered by United initially became a part of the contract between the parties because Dinwiddie explicitly reserved agreement on them in its Qualifications and Exclusions Document, which it submitted to United on October 15, 1997.[1] *See* Cal. Civ.Code § 1585. We therefore reject the district court's reasoning to the extent that it concluded that Dinwiddie never rejected the No Damages for Delay Provisions, but

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We find it unnecessary to decide whether United's invitation to bid was an offer, which Dinwiddie rejected with its bid, conditioned by its Qualifications and Exclusions Document, or whether Dinwiddie made the first offer by bidding on the contract. Whether Dinwiddie's bid, to which it attached the Qualifications and Exclusions document, was an offer or a counteroffer, we conclude that there is at least a triable issue whether Dinwiddie intended, at the time that it submitted its bid documents, to be bound by the No Damages for Delay Provisions.

merely agreed to continue negotiating regarding it.

We also conclude, however, that the parties' agreement dated October 13 and the subsequent November 18 letters evidence, as a matter of law, an intent to be bound by the other provisions of the contract, even though the parties initially reserved agreement on the No Delay for Damages Provisions. If the parties to a contract reserve for future agreement an element of the contract that is not essential, then the rest of the contract becomes binding. *See Roth v. Garcia Marquez*, 942 F.2d 617, 627 (9th Cir.1991); *Hotel Del Coronado Corp. v. Foodservice Equip.*, 783 F.2d 1323, 1325 (9th Cir.1986). " 'Whether a term is essential depends in part upon the relative importance and the severability of the matter left to the future; it is a question of degree.... The importance of a term may depend on the intentions of the parties.' " *Roth*, 942 F.2d at 627 (quoting *Hotel Del Coronado*, 783 F.2d at 1325) (alteration in original); *accord Coleman Eng'g Co. v. N. Am. Aviation, Inc.*, 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713, 727 (1966). Because the parties here do not dispute that they intended to be bound by the other provisions of the contract, we conclude that they initially left open only the No Damages for Delay and Indemnity Provisions for further negotiation.

The question becomes, then, whether the No Damages for Delay Provisions later became part of a binding contract between the parties. United presents substantial evidence that Dinwiddie ultimately agreed to make United's standard provisions part of the Contract, subject to modification in a subsequent side letter agreement, and that because the only subsequent side letter agreement did not modify the No Damages for Delay Provisions, United's standard provisions remained part of the contract. Multiple factual inferences could be drawn from the evidence that United has presented, however, each of which could change the legal meaning of that evidence. Because we must draw all factual inferences in favor of the party opposing summary judgment, we hold that the district court erred in awarding summary judgment to United on Dinwiddie's contract claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

■ We conclude, however, that there is no material triable issue of fact whether United unlawfully retained $900,000 of the contract price. As the district court explained, the Contract's General Provisions ¶ 9.5.3 gave United the right to retain up to 150 percent of all unsettled claims. The retained $900,000 was substantially less than the unsettled claims at issue in this lawsuit, plus the items of work on the Project that remained unfinished after the Project was substantially completed. Accordingly, the district court did not err in granting summary judgment on this issue.

2. DINWIDDIE'S INDEMNITY AND CONTRIBUTION CLAIMS (SEVENTH AND NINTH CLAIMS FOR RELIEF)

■ We also reverse and remand with regard to Dinwiddie's Implied Equitable Indemnity and Contribution Claims for delay damages by its subcontractors because we determine that if Dinwiddie proves at trial that it is entitled to recover delay damages under the contract, then it may also press its subcontractors claims for delay damages.

We reject United's argument that Dinwiddie's subcontractors must first sue Dinwiddie and obtain judgment against it before Dinwiddie may file suit on their behalf. If a prime contractor is contractual-

ly obligated to pay claims to its subcontractors, then it may bring their claims without first having to wait for the subcontractors to obtain judgment against it in multiple suits in multiple forums. *See Howard Contracting v. G.A. MacDonald Constr. Co.,* 71 Cal.App.4th 38, 83 Cal. Rptr.2d 590, 602 (1998) (arguing that it is well-established that a general contractor is entitled to present the claims of its subcontractors in an action against an owner on a pass-through basis); *Barnard–Curtiss Co. v. United States,* 157 Ct.Cl. 103, 301 F.2d 909, 913 (1962) (holding that, where contract between contractor and subcontractor allowed subcontractor to recover if contractor recovered, contractor was not barred from bringing suit on behalf of subcontractor).

■ United further argues that Dinwiddie was not obligated to bring its subcontractors' claims because paragraph 10 of Dinwiddie's subcontract provides:

> Nothing herein contained shall require Contractor to make any claim against Owner for such delays, and it is agree[d] that the failure of Contractor to prosecute any such claim against Owner shall not entitle Subcontractor to any claim for damages against Contractor.

We hold, however, that under this provision, Dinwiddie is contractually obligated to bring its subcontractors claims *if and when it brings its own claims.* Paragraph 10 continues: "in the event ... that Contractor obtains additional compensation from Owner on account of ... delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances." This clause creates a contractual obligation, albeit a contingent one that does not obligate Dinwiddie to pay subcontractor claims if Dinwiddie chooses not to pursue its own claims or if it is unsuccessful and does not recover.

■ If United establishes at trial that Dinwiddie's claims for its own delay damages are barred by a valid No Damages for Delay Provisions, however, then Dinwiddie may not recover delay damages on behalf of its subcontractors. General Provisions ¶ 5.3.1 of the parties' Contract specifically provides that Dinwiddie shall subject all subcontractors to the requirements of the Contract. Moreover, Paragraph 2 of Dinwiddie's subcontract provides that "Subcontractor agrees to ... do everything in strict conformance with, and subject to, this Subcontract and the Contract documents ...."

### 3. CLAIM FOR DECLARATORY RELIEF (EIGHTH CLAIM FOR RELIEF)

We also reverse and remand with regard to Dinwiddie's claim for declaratory relief to the extent that it is derivative of the above-discussed claims.

## B. UNITED'S MOTION FOR SUMMARY JUDGMENT ON DINWIDDIE'S OTHER CLAIMS

We determine, however, that United is entitled to summary judgment on Dinwiddie's other claims.

### 1. CLAIMS FOR REASONABLE VALUE OF SERVICES RENDERED AND UNJUST ENRICHMENT (TENTH AND ELEVENTH CLAIMS FOR RELIEF)

■ Dinwiddie argues that, even if the No Damages for Delay Provisions became part of the contract at some point, the substantial changes to the size, scope, price, and phasing of the Project worked as an abandonment of the Contract. If the contract was abandoned, Dinwiddie argues that it is entitled to be compensated for the value of the services rendered, including delay costs. *See C. Norman Peterson*

Co. v. Container Corp. of Am., 172 Cal. App.3d 628, 218 Cal.Rptr. 592, 598, 601 (1985). We do not consider this argument however, because Dinwiddie failed to raise it before the district court. Janes v. Wal-Mart Stores, Inc., 279 F.3d 883, 887 (9th Cir.2002).

We also reject any other argument that Dinwiddie is entitled to additional compensation for reasonable value of services rendered or to prevent United's unjust enrichment. Dinwiddie has been paid under the Contract; it just has not been paid as much as it believes that it should have been. Dinwiddie cannot recover additional monies in equity when it is bound by a contract that expressly covers compensation. See Hedging Concepts, Inc. v. First Alliance Mortgage Co., 41 Cal. App.4th 1410, 49 Cal.Rptr.2d 191, 197–98 (1996) ("[I]t is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation.").

## 2. GOOD FAITH AND FAIR DEALING CLAIM (SECOND CLAIM FOR RELIEF)

There is no merit to Dinwiddie's claim that United breached the implied covenant of good faith and fair dealing that is implied in every contract. Because the Contract explicitly addressed compensation, whether or not it also included a valid No Damages for Delay Provisions, any claim that United had a good faith obligation to pay delay damages is precluded by the express language of the contract. Haggard v. Kimberly Quality Care, Inc., 39 Cal.App.4th 508, 46 Cal.Rptr.2d 16, 24 (1995) ("There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." (citation and internal quotation marks omitted)).

The other possible theory urged by Dinwiddie is that United had a good faith obligation to continue to negotiate delay damages. But even if United had such an obligation, Dinwiddie could not recover because any damages from a breach of such an obligation is inherently speculative. See, e.g., Vestar Dev. II v. Gen. Dynamics Corp., 249 F.3d 958, 961–62 (9th Cir.2001); accord Auerbach v. Great W. Bank, 74 Cal.App.4th 1172, 88 Cal.Rptr.2d 718, 732 (1999). See also Copeland v. Baskin Robbins USA, 96 Cal.App.4th 1251, 117 Cal. Rptr.2d 875, 884–85 (holding that damages for a breach of contract to negotiate an agreement are measured by the injury suffered by the plaintiff in relying on the defendant to negotiate in good faith, not by expectation damages). Therefore, under either theory, United was entitled to summary judgment on this claim.

## 3. FRAUD CLAIMS (THIRD, FOURTH, FIFTH, AND SIXTHS CLAIMS FOR RELIEF)

Dinwiddie also argues that the district court erred in granting summary judgment on its four fraud-related claims: Intentional Misrepresentation (Third Claim for Relief); Promise Without Intent to Perform (Fourth); Fraudulent Concealment (Fifth); and Negligent Misrepresentation (Sixth). We reject these arguments. Each of Dinwiddie's fraud claims are based on its premise that United promised to negotiate and pay delay damages by countersigning the November 18 letter. Dinwiddie has presented no evidence of such a promise, however. Accordingly, the district court properly granted summary judgment on these claims in favor of United.

## C. DINWIDDIE'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIMS

The district court did not err in refusing to grant summary judgment in Dinwiddie's

favor on Dinwiddie's claims. As discussed above, with regard to Dinwiddie's breach of contract claim and its derivative claims, United has presented substantial evidence that parties at some point became bound by valid No Damages for Delay Provisions. There is therefore a genuine material triable issue of fact whether the parties mutually agreed to these provisions. With regard to Dinwiddie's other claims, United is entitled to judgment in its favor as a matter of law.

## D. UNITED'S COUNTERCLAIM

We also affirm the district court's dismissal of United's counterclaim for indemnity and breach of contract.

█ United argues that the district court based its ruling on a general observation, that "a[n] indemnitor in an indemnity contract generally undertakes to protect the indemnitee against loss or damage through liability to a third person," *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, 13 Cal.App.4th 949, 17 Cal.Rptr.2d 242, 253 (1993), without interpreting the contractual terms in harmony with the actual intent of the parties. We disagree. The district court determined intent from the natural meaning of the contract terms:

> The intention of the parties is to be ascertained from the "clear and explicit" language of the contract. And, unless given some special meaning by the parties, the words of a contract are to be understood in their "ordinary and popular sense." "In interpreting an express indemnity agreement, the courts look first to the words of the contract to

determine the intended scope of the indemnity agreement."

(citing *Centex Golden Constr. Co. v. Dale Tile Co.*, 78 Cal.App.4th 992, 93 Cal. Rptr.2d 259, 262 (2000) (quoting, *inter alia, Continental Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal.App.4th 500, 61 Cal.Rptr.2d 668, 670 (1997)). Under this standard, the district court found that the "references to 'claims,' 'damage,' or 'injury' 'caused by, resulting from, arising out of or occurring in connection with ... the Work' show that [the Indemnity Provision, ¶ 4.18.1 of the side letter], is a standard indemnity agreement, by which the parties guarded United against third-party claims." Because United did not establish any evidence of contrary intent, the district court correctly concluded that United did not present a triable issue that the parties intended the Indemnity provision to cover claims by Dinwiddie against United.[2] Moreover, we agree with the district court that we should reject United's interpretation of the Indemnity Provisions because it would in effect prevent Dinwiddie from enforcing the contract against United, and would thereby render the parties' Contract largely meaningless. *See Heppler v. J.M. Peters Co.*, 73 Cal.App.4th 1265, 87 Cal.Rptr.2d 497, 510 (1999) (citing Cal. Civ.Code § 1643) (explaining that "[c]ontracts should be read in a manner that renders them reasonable and capable of being put into effect").

█ United argues in the alternative that, even if Dinwiddie's obligation to defend and indemnify is limited to claims by third parties, a large portion of Dinwid-

---

**2.** At most, United suggests that the No Damages for Delay Provisions and other parts of the Contract evidence contrary intent because they evidence United's desire to avoid all costs associated with delay damages. But this conclusory statement that a certain contract provision has a certain meaning does not suffice to create a triable issue of fact.

*See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (holding party opposing summary judgment does not show "genuine issue for trial" by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

die's claims are alleged as "pass-through" delay claims brought on behalf of subcontractors, and therefore are "third party claims." As discussed above, however, Dinwiddie appears to have a contractual obligation to claim the subcontractors' damages when it brings its own claims. Because Dinwiddie has this obligation, these claims are not separate and distinct, for purposes of the Indemnity Provisions, from Dinwiddie's own claims.

█ United's counterclaim also sought relief on a third, implied indemnity cause of action, which the district court separately rejected. However, because United never addressed directly the implied indemnity claim in its opening brief, it has waived any contention by United that the district court erred in granting summary judgment in favor of Dinwiddie. *See Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir.1992) (refusing to consider issues "that are not specifically and distinctly raised and argued in appellant's opening brief").

█ We also affirm the district court's ruling that United cannot recover for breach of contract to the extent its claim arises out of the parties' indemnification agreement. Because we hold that there is no express or implied indemnification agreement between the parties requiring Dinwiddie to indemnify United for Dinwiddie's claims in this lawsuit, any claim for breach of contract based upon such indemnification claims must necessarily fail.

## II.

For the foregoing reasons, we reverse and remand for trial on Dinwiddie's breach of contract claim (First Claim for Relief), Dinwiddie's Indemnity and Contribution Claims (Seventh and Ninth Claims for Relief), and Dinwiddie's Claim for Declaratory Relief (Eighth Claim for Relief) to the extent that those claims are predicated on Dinwiddie's assertion that United owes de-

lay damages under the parties' contract. We affirm all other summary judgment rulings of the district court. The parties shall bear their own costs on appeal.

AFFIRMED in part; REVERSED in part; and REMANDED.